UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ALICE PECK DAY MEMORIAL HOSPITAL, | **:** |
| | **:** |
| THE CHESHIRE MEDICAL CENTER, and | **:** |
| | **:** |
| VALLEY REGIONAL HOSPITAL, INC., | **:** |
| | **:** |
| Plaintiffs, | **:** |
| v. | **:**   CIVIL ACTION No. |
| | **:** |
| MICHAEL SMITH, in his official capacity as the | **:** |
| Secretary of the Vermont Agency of Human | **:** |
| Services, | **:** |
| | **:** |
| STATE OF VERMONT AGENCY OF HUMAN | **:** |
| SERVICES, | **:** |
| | **:** |
| ALEX AZAR, in his official capacity as Secretary | **:** |
| of the United States Department of Health and | **:** |
| Human Services, | **:** |
| | **:** |
| SEEMA VERMA, in her official capacity as | **:** |
| Administrator of the Centers for Medicare & | **:** |
| Medicaid Services, and | **:** |
| | **:** |
| CENTERS FOR MEDICARE & MEDICAID | **:** |
| SERVICES, | **:** |
| | **:** |
| Defendants. | **:** |

## COMPLAINT

Plaintiffs Alice Peck Day Memorial Hospital ("APD"), The Cheshire Medical Center ("Cheshire"), and Valley Regional Hospital, Inc. ("VRH") (collectively, "Plaintiff Hospitals") seek declaratory and injunctive relief against Defendants Michael Smith, Commissioner, the State of Vermont Agency of Human Services ("AHS"), Alex Azar, Seema Verma, and the Centers for Medicare & Medicaid Services ("CMS") for violations of the United States Constitution, the

Medicaid Act, the Administrative Procedure Act ("APA"), and 42 U.S.C. § 1983.  In support thereof, Plaintiff Hospitals state as follows:

## I.   **INTRODUCTION**

1.   APD, Cheshire, and VRH participate in Vermont's Medicaid program and are located within approximately ten, twenty and five miles, respectively, from the Vermont state border.  Each of the Plaintiff Hospitals is a high-volume provider of medical services to Vermont Medicaid enrollees, due in large part to the Plaintiff Hospitals' geographic proximity with Vermont. APD, Cheshire, and VRH treat Vermont Medicaid and uninsured patients of all acuity levels, and incur similar costs and expend similar resources as Vermont's comparatively-sized and similarly-situated in-state hospitals in order provide care to Vermont resident patients.

2.   Under the Vermont State Medicaid Plan and Vermont law, Defendant AHS, through its Department of Vermont Health Access ("DVHA") reimburses APD, Cheshire, and VRH for inpatient and outpatient hospital services rendered to Vermont Medicaid patients at significantly lesser rates than those paid to comparatively-sized and similarly-situated in-state Vermont hospitals—solely because APD, Cheshire and VRH are located in New Hampshire, slightly beyond the Vermont state border.

3.   Plaintiff Hospitals are similarly situated to in-state Vermont hospitals with respect to the level of care and services they provide to Vermont Medicaid and uninsured patients and the volume of Vermont Medicaid and uninsured patients they treat.

4.   Nonetheless, Defendants Smith and AHS have sought and obtained approval from Defendants Azar, Verma, and CMS of state plan amendments ("SPA") to the Vermont State Medicaid Plan that permit them to engage in this intentional discrimination against Plaintiff Hospitals in violation of the Equal Protection and Commerce Clauses of the United States

2

Constitution and in violation of 42 C.F.R. § 431.52. Those approved SPAs therefore violate 5 U.S.C. § 706 and must be vacated and set aside.

5.     Additionally, because Defendants Smith and AHS are acting unconstitutionally under color of state law in violation of Plaintiff Hospitals' constitutional rights under the Equal Protection Clause and the Commerce Clause, their actions must be declared unconstitutional and permanently enjoined under 42 U.S.C. § 1983.

6.      These claims are similar to those asserted by Mary Hitchcock Memorial Hospital with regard to differential rates paid to the University of Vermont Medical Center. *See Mary Hitchcock Memorial Hospital d/b/a Dartmouth-Hitchcock v. Gobeille*, Civil No. 15-cv-453-LM (filed Nov. 3, 2015) (the "D-HH Litigation").  That litigation resulted in Vermont amending its State Plan to achieve parity in payments for those two similarly situated hospitals.

## II.     **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 702-706, as this action presents a case and controversy under the United States Constitution, the Medicaid Act, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The illegal payments at issue in this case were directed to and received by APD in Lebanon, New Hampshire, by Cheshire in Keene, New Hampshire, and by VRH in Claremont, New Hampshire.

8.      Venue lies in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue also lies in this district under 28 U.S.C. § 1391(e) because Defendants Azar and Verma are officers and employees of United States agencies, CMS is a United States agency, APD, Cheshire, and VRH reside in New Hampshire, and no real property is involved in this action. Venue also lies in this district under 5

U.S.C. § 703 because there is no special statutory procedure for appeal and this court is a court of competent jurisdiction.

### III.     PARTIES

9.     Plaintiff Alice Peck Day Memorial Hospital ("APD") is a New Hampshire non-profit healthcare charitable trust licensed for 25 beds with a principal place of business located at 10 Alice Peck Day Drive, Lebanon, New Hampshire 03766. APD has been a member of the Dartmouth-Hitchcock Health ("D-HH") System since 2016. It is a critical access hospital ("CAH") located within ten miles of the Vermont border. Due to this proximity, APD cares for a proportionally significant number of Vermont residents and Vermont Medicaid beneficiaries.

10.     Plaintiff The Cheshire Medical Center ("Cheshire") is a New Hampshire non-profit healthcare charitable trust licensed for 169 beds with a principal place of business located at 580 Court Street, Keene, New Hampshire 03431. Cheshire has been a member of the D-HH System since 2015. Cheshire is located within approximately twenty miles of the Vermont border. Due to this proximity, Cheshire cares for a proportionally significant number of Vermont residents and Vermont Medicaid beneficiaries.

11.     Plaintiff Valley Regional Hospital, Inc. ("VRH") is a New Hampshire non-profit healthcare charitable trust licensed for 25 beds with a principal place of business located at 243 Elm Street, Claremont, New Hampshire 03743. VRH is a CAH located approximately five miles from the Vermont border. Due to this proximity, VRH cares for a proportionally significant number of Vermont residents and Vermont Medicaid beneficiaries.

12.     Defendant Michael Smith is the Secretary of the State of Vermont's Agency for Human Services, located at 280 State Drive, Waterbury, Vermont 05671-1080.  Defendant Smith is sued solely in his official capacity.

4

13.     Defendant AHS is the single state agency designated to administer or supervise the administration of the Vermont Medicaid program under the Vermont Medicaid State Plan. Its central office is also located at 280 State Drive, Waterbury, Vermont 05671-1080. The DVHA is a division of AHS responsible for administering the Vermont Medicaid health insurance program.

14.     Defendant Alex Azar is the United States Secretary of Health and Human Services. Defendant Azar, by and through his designees at CMS, undertook the unlawful and unauthorized actions challenged in this case. Defendant Azar is sued solely in his official capacity.

15.     Defendant Seema Verma is Administrator of CMS, and oversees the agency that administers the Medicaid program. Defendant Verma is sued solely in her official capacity.

16.     Defendant CMS is the federal agency to which Defendant Azar has delegated the authority, pursuant to the Social Security Act, to administer the Medicaid program.

## IV.    FACTUAL ALLEGATIONS

### A.    New Hampshire CAHs APD and VRH

17.     APD participates in Vermont's Medicaid program and has for decades.

18.     VRH participates in Vermont's Medicaid program and has for decades.

19.     Given their proximity to Vermont, APD and VRH care for a proportionately significant number of Vermont residents, including Vermont uninsured and Medicaid beneficiaries.

20.     APD provides a wide range of inpatient and outpatient services including, *inter alia*, dermatology, emergency medicine, family medicine, general surgery, geriatrics, gynecology, orthopaedics, pediatrics, pain and physiatry, plastic surgery, podiatry, neurosurgery, occupational health, radiology, physical therapy, sleep health, urology, and women's care.

21.     VRH provides a wide range of inpatient and outpatient services including, *inter alia*, primary care, urgent care, emergency medicine, women's health, cardio-pulmonary, medical imaging, laboratory, rehabilitation, speech therapy, audiology, surgical services-general orthopedic, gynecology and urology.

22.     APD and VRH provide these medical services to Vermont Medicaid and uninsured patients.

23.     APD and VRH also provide medical services to Vermont Medicaid patients that are needed because the beneficiary's health would be endangered if he or she were required to travel to a less proximate Vermont-based hospital for his or her care.

24.     It is also a general practice for Vermont Medicaid beneficiaries in proximity to the Vermont-New Hampshire border to use APD's and VRH's medical resources, which are located in New Hampshire.

25.     APD and VRH are similarly situated to many in-state Vermont hospitals, including Vermont CAHs, in all material respects.

26.     Like in-state Vermont hospitals, and Vermont CAHs specifically, APD and VRH treat a large number of Vermont Medicaid and uninsured patients and incur uncompensated care costs in doing so.

27.     The only relevant differences between APD and VRH on the one hand, and in-state Vermont hospitals and CAHs on the other, is the fact that APD and VRH are located in New Hampshire, approximately ten and five miles, respectively, beyond the Vermont border.

28.     Based on this difference alone, Defendants Smith and AHS have been actively discriminating against APD and VRH with respect to inpatient and outpatient rate reimbursement.

There is no dispute that the Vermont State Medicaid Plan has historically paid, and still does pay, higher reimbursement rates to in-state CAHs compared to out-of-state CAHs.

29.     Based solely on the fact that APD and VRH are not located in Vermont, Defendants Azar, Verma, and CMS have approved amendments to the Vermont State Medicaid Plan that were crafted and sought by Defendants Smith and AHS and that purportedly sanction and permit them to discriminate against APD and VRH with regard to inpatient and outpatient hospital rates.

### i.     Discriminatory Inpatient Rates for New Hampshire CAHs APD and VRH

30.     As set forth in Vermont's Medicaid SPA, effective October 1, 2016, Defendants Smith and AHS, through the DVHA, have set the in-state base rate for non-psychiatric inpatient hospital services provided by Vermont CAHs at $9,273.00. *See* SPA Attachment 4.19-A (attached hereto as **Exhibit A**), § III(B)(1) at 1c-5.

31.     In contrast, Defendants Smith and AHS, through the DVHA, have arbitrarily assigned hospitals, including CAHs like APD and VRH, located outside of Vermont's borders a base rate for inpatient hospital services of $2,900.00—a facial disparity of nearly seventy percent (70%). *See* Exhibit A, § IV(G)(1)(c) at 1c-10 (for payments on or after October 1, 2016).

32.     When the costs associated with providing inpatient services to a particular patient are atypically high and rise above a fixed-loss cost threshold amount (the "fixed outlier value"), the treating hospital may qualify for "outlier" payments under the Vermont State Medicaid Program. *See* Exhibit A (Attachment 4.19-A, § IV(H)(1-2) at 1c-10). Outlier payments are made to the hospital for eligible cases based on a marginal cost factor expressed as a percentage of the costs above the fixed outlier value threshold.

33.     Defendants Smith and AHS, through the DVHA, have set APD's and VRH's fixed outlier value at $50,000, while they have set Vermont's in-state hospitals' (including CAHs') fixed

outlier value at $24,000—a facial disparity of greater than fifty percent (50%). *See* Exhibit A, § IV(H)(1) at 1c-10. This fixed outlier value threshold for APD and VRH, based solely on their out-of-state loci, raises an unconstitutional and unlawful barrier to access to fixed outlier payments.

34.     Defendants Smith and AHS, through the DVHA, have set APD's and VRH's reimbursement rate for outlier payments at only fifty percent (50%), while having set similar Vermont in-state hospitals' reimbursement rate for outlier payments at eighty percent (80%)—a facial disparity of thirty percent (30%). *See* Exhibit A, § IV(H)(2) at 1c-10.

35.     For APD, this disparate treatment amounts to more than a $500,000 annual deficiency from what would be received had in-state rates been applied.

36.     For VRH, this disparate treatment amounts to approximately a $37,000 annual deficiency from what would be received had in-state rates been applied.

37.     Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, APD and VRH are deprived of substantial reimbursement for comparable inpatient hospital services provided by Vermont-based CAHs solely because they are not within Vermont, and even though a large volume of Vermont Medicaid patients utilize and benefit from the proximity, convenience, and high quality of care provided by APD and VRH.

38.     This disparate treatment of, and the resulting annual deficiencies for, APD and VRH is not only unfair but also potentially threatens the sustainability of these New Hampshire CAHs as providers to Vermont Medicaid beneficiaries.

    ii.     **Discriminatory Outpatient Rates for New Hampshire CAHs APD and VRH**

39.     The same disparate treatment described above for CAH inpatient rates extends to reimbursement for outpatient hospital services. Effective July 1, 2019, Defendants Smith and

AHS, through the DVHA, reimburse Vermont's in-state hospitals classified as CAHs for outpatient services at a rate of "113.00% of the Medicare 2019 OPPS national APC payment rate without local adjustment."[1] *See* SPA Attachment 4.19-B (attached hereto as **Exhibit B**), § 2(a)(2)(ii)(A) at 2a (1a) (for payments on or after July 1, 2018).

40.     In contrast, Defendants Smith and AHS, through the DVHA, reimburse APD and VRH, which are CAHs, at the lesser rate of "82.00% of the Medicare 2019 OPPS national APC payment rate without local adjustment." *Id*.

41.     This significant disparity—over thirty percent (30%)—in the outpatient reimbursement rates amounts to an additional annual shortfall of approximately $200,000 for APD, and approximately $70,000 for VRH.

42.     Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, APD and VRH are deprived of substantial reimbursement for outpatient hospital services solely because they are not located within Vermont, and even though a large volume of Vermont Medicaid patients utilize and benefit from the proximity, convenience, and high quality of care provided by APD and VRH.

### B.  <u>New Hampshire PPS Hospital Cheshire</u>

43.     Cheshire participates in Vermont's Medicaid program, and is located in Keene, New Hampshire, approximately twenty miles from the Vermont border.

44.     Given its proximity to Vermont, Cheshire cares for a proportionately significant number of Vermont residents, including Vermont uninsured and Medicaid beneficiaries.

---

[1] The majority of outpatient services are paid using the Medicare Outpatient Prospective Payment System ("OPPS") Ambulatory Payment Classification ("APC") fee schedule as the basis.

45.     Cheshire provides a continuum of care spanning primary care and specialty medicine, to surgical services and inpatient care. Cheshire's broad range of services to support the health and wellness of its patients includes, *inter alia*, allergy/immunology, audiology, cardiology, dermatology, ENT, endocrinology, family medicine, gastroenterology, general surgery, geriatrics, infectious disease, internal medicine, nephrology, neurology, nutrition, obstetrics, occupational health, ophthalmology, orthopaedics, pain management, palliative care, pathology, pediatrics, physiatry, podiatry, pulmonary medicine, radiology, radiology, rheumatology, sports medicine, urology, and walk-in care services.

46.     Cheshire provides these medical services to Vermont Medicaid and uninsured patients.

47.     Cheshire also provides medical services to Vermont Medicaid patients that are needed because the beneficiary's health would be endangered if he or she were required to travel to a less proximate or more limited-service Vermont hospital for his or her care.

48.     Cheshire provides medical services to Vermont Medicaid patients that are needed because of a medical emergency.

49.     It is also a general practice for Vermont Medicaid beneficiaries in proximity to the Vermont-New Hampshire border to use Cheshire's medical resources, which are located in New Hampshire.

50.     Cheshire is similarly situated to many in-state Vermont hospitals offering a similar range of services in all material respects.

51.     Like in-state Vermont hospitals, Cheshire treats a large number of Vermont Medicaid and uninsured patients and incurs uncompensated care costs in doing so.

52.     The only relevant difference between Cheshire on the one hand, and in-state Vermont hospitals offering similar services on the other, is the fact that Cheshire is located in New Hampshire, not in Vermont.

53.     Based on this difference alone, Defendants Smith and AHS have been actively discriminating against Cheshire with respect to inpatient and outpatient rate reimbursement.  There is no dispute that the Vermont State Medicaid Plan has historically paid, and still does pay, higher reimbursement rates to in-state PPS hospitals compared to out-of-state PPS hospitals.

54.     Based solely on the fact that Cheshire is not located in Vermont, Defendants Azar, Verma, and CMS have approved amendments to the Vermont State Medicaid Plan that were crafted and sought by Defendants Smith and AHS and that purportedly sanction and permit them to discriminate against Cheshire with regard to inpatient and outpatient hospital rates.

### i.     Discriminatory Inpatient Rates for Cheshire

55.     As set forth in Vermont's Medicaid SPA, effective October 1, 2016, Defendants Smith and AHS, through the DVHA, have set the in-state base rate for inpatient hospital services provided by Prospective Payment System ("PPS") hospitals in Vermont at $8,835.00. *See* Exhibit A, Attachment 4.19-A, § III(B)(1) at 1c-5.

56.     In contrast, Defendants Smith and AHS, through the DVHA, have arbitrarily assigned PPS hospitals located outside of Vermont's borders, like Cheshire, a base rate for inpatient hospital services of $2,900.00—a facial disparity of approximately sixty-seven percent (67%). *See id*., § IV(G)(1)(c) at 1c-10 (effective January 1, 2018 for payments on or after October 1, 2016).

57.     In a similar manner as they have for CAHs APD and VRH, Defendants Smith and AHS, through the DVHA, have set Cheshire's fixed outlier value at $50,000, while they have set

11

Vermont's in-state PPS hospital outlier threshold at $24,000—a facial disparity of greater than fifty percent (50%). *See* Exhibit A, § IV(H)(1) at 1c-10; *see also* discussion of outlier payments, *supra*. This fixed outlier value threshold for Cheshire, based solely on its out-of-state locus, raises an unconstitutional and unlawful barrier to access to outlier payments.

58. For Cheshire, this disparate treatment amounts to more than a $575,000 annual deficiency from what would be received had in-state rates been applied.

59. Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, Cheshire is deprived of substantial reimbursement for inpatient hospital services solely because it is not geographically located within Vermont, and even though a large volume of Vermont Medicaid patients utilize and benefit from the proximity, convenience, and high quality of care provided by Cheshire.

60. This disparate treatment of, and the resulting annual deficiency for, Cheshire is not only unfair but also potentially impairs the sustainability of Cheshire's provision of health care services to Vermont Medicaid beneficiaries.

### ii. Discriminatory Outpatient Rates for Cheshire

61. The same disparate treatment described above for out-of-state PPS hospital inpatient rates extends to reimbursement for outpatient hospital services. Effective July 1, 2019, Defendants Smith and AHS, through the DVHA, are reimbursing Vermont's in-state PPS hospitals for outpatient services at a rate of "89.00% of the Medicare 2019 OPPS national APC payment rate without local adjustment." *See* Exhibit B, § 2(a)(2)(ii)(A) at 2a (1a) (for payments on or after July 1, 2018); *see also* n.1, *supra*.

62.     By contrast, Defendants Smith and AHS, through the DVHA, reimburse Cheshire, which is a PPS hospital, at the lesser rate of "82.00% of the Medicare 2019 OPPS national APC payment rate without local adjustment." *Id*.

63.     This disparity—seven percent (7%)—in the outpatient reimbursement rates for PPS hospitals located outside Vermont's borders amounts to an additional annual shortfall of approximately $80,000 for Cheshire.

64.     Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, Cheshire is deprived of substantial reimbursement for outpatient hospital services solely because it is not geographically located within Vermont, and even though a large volume of Vermont Medicaid patients utilize and benefit from the proximity, convenience, and high quality of care provided by Cheshire.

## C. Vermont's Medicaid Inpatient and Outpatient Reimbursement Methodology and Rates, Facially and As Applied, Discriminate Against Out-of-State Hospitals

65.     The Medicaid program in Vermont is administered through the Medicaid State Plan and certain federally-approved waivers as may from time to time be in effect. The Medicaid State Plan is updated through the State Plan Amendment (SPA) process, whereby the Vermont AHS submits proposed changes to its Medicaid policies or operational approaches to CMS for review and approval. The Vermont SPA Attachments establishing payment rates at issue here were approved and implemented pursuant to this joint state-federal process.

66.     Vermont's SPA, on its face, singles out the out-of-state Plaintiff Hospitals for discriminatory treatment regarding inpatient reimbursement. Specifically, it indicates that "[o]ut-of-state facilities will receive payments using the same payment formulas" used to determine the

non-psychiatric inpatient hospital reimbursement rates for in-state hospitals, including CAHs and PPS hospitals. *See* Exhibit A (Attachment 4.19-A), § IV(G), Page 1c-10. "However, the values of components of the formulas differ from those used to pay in-state hospitals." *Id.*

67.     The State Plan does not explain why the values of the components used to calculate out-of-state inpatient hospital reimbursement rates—for CAHs or PPS hospitals—differ from the values of the components used to calculate in-state inpatient hospital reimbursement rates. *See id.*

68.     However, a review of the payment formulas and payment components shows that the particular components used to calculate out-of-state inpatient hospital reimbursement rates are assigned lesser values for no reason other than the geographic location of those hospitals beyond Vermont's border. *See id.*, § III(B) at 1c-5, 1c-6.

69.     Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, APD, Cheshire, and VRH are each deprived of substantial reimbursement for inpatient hospital services solely because they are not geographically located within Vermont, even though a large volume of Vermont Medicaid patients utilize and benefit from their proximity, convenience, and high quality of care.

70.     Vermont's SPA also singles out the out-of-state Plaintiff Hospitals for discriminatory treatment regarding outpatient reimbursement. Specifically, it indicates that "the DVHA has defined peer groups to set rates for groups of hospitals in its [Outpatient Prospective Payment System]." Exhibit B (Attachment 4.19-B), § 2(a)(2)(ii)(A) at 2a(1a). Those "peer groups" are: (1) in-state CAHs; (2) in-state non-CAH, non-academic medical center hospitals; (3) two academic medical centers (University of Vermont Medical Center and Dartmouth-Hitchcock

Medical Center); and (4) all other out-of-state hospitals, including out-of-state CAHs and PPS hospitals. *Id.*

71.     The State Plan does not explain why it has classified the peer groups in this manner, or why the base rates assigned to each peer group varies so substantially between in-state and out-of-state CAHs and PPS hospitals. *See id.*

72.     However, a review of the SPA discussion of pricing methodology and payment provisions reveals that the base rates assigned to out-of-state CAHs and PPS hospitals are of lesser value for no reason other than the geographic location of those hospitals beyond Vermont's border. *See id.*

73.     Consequently, under the Vermont State Medicaid Plan, as approved by Defendants Azar, Verma, and CMS, and as administered and enforced by Defendants Smith and AHS, APD, Cheshire, and VRH are each deprived of substantial reimbursement for outpatient hospital services solely because they are not geographically located within Vermont, even though a large volume of Vermont Medicaid patients utilize and benefit from their proximity, convenience, and high quality of care.

## COUNT I – EQUAL PROTECTION

### Defendants Smith and AHS—42 U.S.C. § 1983

74.     Plaintiff Hospitals repeat and reallege the allegations contained in Paragraphs 1-73 above and incorporate them herein by reference.

75.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

76.     "In order to establish an equal protection violation, a plaintiff must show state-imposed disparate treatment compared with others similarly situated in all relevant respects." *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014) (internal quotations omitted).

77.     Where no suspect classification is involved, a law will be sustained only if the classification drawn is rationally related to a legitimate state interest. *González-Droz v. González-Colón*, 660 F.3d 1, 9 (1st Cir. 2011).

78.     Plaintiff Hospitals are regulated by Defendants Smith and AHS, and are subject to the regulatory actions they take to administer and enforce the Vermont State Medicaid Plan and the Vermont Medicaid program.

79.     Plaintiff Hospitals are similarly situated to comparable, in-state Vermont hospitals and provide comparable services; yet, for no reason rationally related to any legitimate state interest, Defendant Smith, in his official capacity, and Defendant AHS continue to enforce against Plaintiff Hospitals state law, regulation, or policy that violates Plaintiff Hospitals' Equal Protection rights under the Fourteenth Amendment to the United States Constitution.

80.     These actions by Defendants Smith and AHS cause Plaintiff Hospitals significant ongoing harm and must be declared unconstitutional and permanently enjoined under 42 U.S.C. § 1983. *See Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citing and discussing *Ex parte Young*, 209 U.S. 123 (1908)).

## COUNT II – COMMERCE CLAUSE

### Defendants Smith and AHS—42 U.S.C. § 1983

81.     Plaintiff Hospitals repeat and reallege the allegations contained in Paragraphs 1-80 and incorporate them herein by reference.

82.     "The Constitution's Commerce Clause serves as both an affirmative grant of power to Congress, U.S. Const. art. I, § 8, cl. 3, and 'a further, negative command, known as the dormant Commerce Clause.'" *Industria y Distribution de Alimentos v. Trailer Bridge*, 797 F.3d 141, 144 (1st Cir. 2015) (quoting *Comptroller of Treasury of Md. v. Wynne*, 135 S. Ct. 1787, 1794 (2015)).

83.     It "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) (internal quotation marks, bracket alterations, and citations omitted).

84.     The dormant Commerce Clause "precludes States from discriminat[ing] between transactions on the basis of some interstate element . . . and inhibits economic protectionism between the states." *Trailer Bridge*, 797 F.3d at 144-45 (internal quotations and citations omitted).

85.     Where "economic protectionism is effected," "a virtually *per se* rule of invalidity has been erected." *See Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

86.     Thus, state regulation "that discriminates on its face against interstate commerce, whether in purpose or effect, demands heightened scrutiny." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 10 (1st Cir. 2007). "Under this rigorous form of review," a law "is invalid unless it furthers a legitimate local objective that cannot be served by reasonable non-discriminatory means." *Id.* at 10-11.

87.     Plaintiff Hospitals are regulated by Defendants Smith and AHS, and are subject to the regulatory actions they take to administer and enforce the Vermont State Medicaid Plan and the Vermont Medicaid program.  Vermont has in place laws, regulations, or policies, such as the Vermont State Medicaid Plan, that permit Defendants Smith and AHS to impose discriminatory Medicaid reimbursement payments on Plaintiff Hospitals.

88.     The Vermont State Medicaid Plan, as administered and enforced by Defendants Smith and AHS, under Vermont law, regulation, and policy, discriminates on its face against interstate commerce. It also discriminates against interstate commerce in both purpose and effect by targeting Plaintiff Hospitals, which compete with Vermont's comparable in-state hospitals, and by making lesser reimbursement payments to Plaintiff Hospitals based solely on their geographic location in New Hampshire.

89.     This discriminatory treatment deprives Plaintiff Hospitals of substantial Medicaid funds each year in lost inpatient and outpatient reimbursements.

90.     Specifically, with respect to the inpatient base rate, the Vermont State Medicaid Plan singles out Plaintiff Hospitals for discriminatory treatment by reimbursing them at substantially-reduced rates as compared with in-state hospitals.

91.     With respect to outpatient rates, the Vermont State Medicaid Plan singles out Plaintiff Hospitals to receive lower reimbursement solely because Plaintiff Hospitals are located out-of-state, barely beyond the Vermont border, while similarly-situated in-state Vermont hospitals receive a significantly higher reimbursement rate.

92.     The sole objective of these reimbursement and payment schemes is to favor Vermont's in-state over out-of-state economic interests.

93.     No legitimate local objective is furthered by this intentional, economic protectionism that cannot be served by reasonable non-discriminatory means.

94.     The actions by Defendants Smith and AHS in administering and enforcing these discriminatory rate and payment schemes pursuant to the Vermont State Medicaid Plan and Vermont law, regulation, and policy cause Plaintiff Hospitals significant ongoing harm and must be declared unconstitutional and permanently enjoined under 42 U.S.C. § 1983. *See Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1638.

## COUNT III – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT

### Defendants Azar, Verma, and CMS—5 U.S.C. § 706

95.     Plaintiff Hospitals repeat and reallege the allegations contained in Paragraphs 1-94 and incorporate them herein by reference.

96.     For no reason rationally related to any legitimate state interest, Defendants Azar, Verma, and CMS have approved numerous amendments to the Vermont State Medicaid Plan that permit Vermont, through Defendants Smith and AHS, to intentionally discriminate against Plaintiff Hospitals with respect to reimbursement for inpatient and outpatient hospital services, in violation of the Equal Protection Clause of the Fourteenth Amendment.

97.     Section 706(2)(A) of the APA requires this Court to hold unlawful, and set aside, agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Also, Section 706(2)(B) of the APA requires this court to hold unlawful, and set aside, agency action that is "contrary to constitutional right, power, privilege, or immunity."

98.     By approving these amendments to Vermont's State Medicaid Plan, Defendants Azar, Verma, and CMS have violated the Equal Protection Clause of the Fourteenth Amendment and the APA provisions set forth at 5 U.S.C. § 706(2)(A) and 5 U.S.C. § 706(2)(B). Consequently,

their approval of the SPAs that permit this unconstitutional and discriminatory treatment, which is purposely designed to harm Plaintiff Hospitals, must be vacated and set aside.

### COUNT IV – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT

**Defendants Azar, Verma, and CMS—5 U.S.C. § 706**

99.      Plaintiff Hospitals repeat and reallege the allegations contained in Paragraphs 1-98 and incorporate them herein by reference.

100.    Defendants Azar, Verma, and CMS have approved numerous amendments to the Vermont State Medicaid Plan that discriminate on their face and in purpose and effect against interstate commerce with respect to inpatient and outpatient reimbursement rates, in violation of the dormant Commerce Clause.

101.    Section 706(2)(A) of the APA requires this court to hold unlawful, and set aside, agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Also, Section 706(2)(B) of the APA requires this court to hold unlawful, and set aside, agency action that is "contrary to constitutional right, power, privilege, or immunity."

102.    By approving these amendments to the Vermont State Medicaid Plan that purportedly allow Defendants Smith and AHS to violate the dormant Commerce Clause of the United States Constitution, Defendants Azar, Verma, and CMS have violated 5 U.S.C. § 706(2)(A) and 5 U.S.C. § 706(2)(B). Consequently, these approvals must be vacated and set aside.

### COUNT V – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT

**Defendants Azar, Verma, and CMS—5 U.S.C. § 706**

103.    Plaintiff Hospitals repeat and reallege the allegations contained in Paragraphs 1-102 and incorporate them herein by reference.

104.    Under the Medicaid Act, a State Plan must "provide for inclusion, to the extent required by regulations prescribed by the Secretary, of provisions (conforming to such regulations) with respect to the furnishing of medical assistance under the plan to individuals who are residents of the State but are absent therefrom." 42 U.S.C. § 1396a(a)(16).

105.    42 C.F.R. § 431.52 interprets 42 U.S.C. § 1396a(a)(16). It provides in relevant part as follows:

> (b) *Payment for services.* A State plan must provide that the State will pay for services furnished in another State <u>to the same extent that it would pay for services furnished within its boundaries</u> if the services are furnished to a beneficiary who is a resident of the State, and any of the following conditions is met:
>
> > (1) Medical services are needed because of a medical emergency;
> >
> > (2) Medical services are needed and the beneficiary's health would be endangered if he were required to travel to his State of residence;
> >
> > (3) The State determines, on the basis of medical advice, that the needed medical services, or necessary supplementary resources, are more readily available in the other State;
> >
> > (4) It is general practice for beneficiaries in a particular locality to use medical resources in another State.
>
> 42 C.F.R. § 431.52(b)(1-4) (emphasis added).

106.    At least three of the four conditions contained in this regulation are met; namely, conditions 1, 2 (for VRH and Cheshire), and 4. 42 C.F.R. § 431.52(b)(1-2, 4).

107.    Nonetheless, despite the fact that Plaintiff Hospitals meet nearly all of these regulatory conditions, Vermont does not reimburse Plaintiff Hospitals for inpatient and outpatient hospital services "to the same extent that [Vermont] would pay for services furnished within its boundaries" when those services are furnished to a Vermont Medicaid beneficiary.

108.    Section 706(2)(A) of the APA requires this court to hold unlawful, and set aside, agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

109.    By approving inpatient and outpatient reimbursement amendments to Vermont's State Medicaid Plan that enable Defendants Smith and AHS to reimburse Plaintiff Hospitals at inpatient and outpatient rates that do not comply with 42 C.F.R. § 431.52, Defendants Azar, Verma, and CMS are in violation of 5 U.S.C. § 706(2)(A) and those approved amendments to the Vermont State Medicaid Plan must be vacated and set aside.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Hospitals respectfully request that this Court:

A.  Declare that Vermont's methodology and reimbursement scheme for inpatient and outpatient hospital services, as reflected in the Vermont State Medicaid Plan and as administered and enforced by Defendants Smith and AHS, are unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, are void *ab initio*, and must be vacated and set aside pursuant to 5 U.S.C. § 706(2)(A), 5 U.S.C. § 706(2)(B), and 42 U.S.C. § 1983;

B.  Declare that Vermont's methodology and reimbursement scheme for inpatient and outpatient hospital services, as reflected in the Vermont State Medicaid Plan and as administered and enforced by Defendants Smith and AHS, are unconstitutional under the dormant Commerce Clause to the United States Constitution, are void *ab initio*, and must be vacated and set aside pursuant to 5 U.S.C. § 706(2)(A), 5 U.S.C. § 706(2)(B), and 42 U.S.C. § 1983;

C.  Declare that Vermont's methodology and reimbursement scheme for inpatient and outpatient hospital services, as reflected in the Vermont State Medicaid Plan, violates 42 C.F.R. § 431.52, are void *ab initio,* and must be vacated and set aside pursuant to 5 U.S.C. § 706(2)(A) and 5 U.S.C. § 706(2)(B);

D.  Order Defendants Azar, Verma, CMS, Smith, and AHS to prospectively create, approve, administer, and enforce a reimbursement system for inpatient and outpatient hospital services under the Vermont State Medicaid Plan that does not violate the Fourteenth Amendment's Equal Protection Clause, the dormant Commerce Clause, and 42 C.F.R. § 431.52(b);

E.   Order and compel Defendants Azar, Verma, CMS, Smith and AHS to treat Plaintiff Hospitals no differently than similarly-situated in-state hospitals for the purposes of determining Plaintiff Hospitals' inpatient and outpatient Medicaid reimbursement rates; and

F.   Permanently enjoin Defendants Smith and AHS from prospectively administering and enforcing Vermont's methodology and reimbursement scheme for inpatient and outpatient hospital services, as reflected in the Vermont State Medicaid Plan and as administered and enforced by Defendants Smith and AHS, under 42 U.S.C. § 1983 to the extent the court declares those portions of the amendments to the Vermont State Medicaid Plan and those official actions unconstitutional or unlawful.

Respectfully Submitted,

ALICE PECK DAY MEMORIAL HOSPITAL, THE CHESHIRE MEDICAL CENTER, AND VALLEY REGIONAL HOSPITAL, INC.,

By Their Attorneys,

**NIXON PEABODY LLP**

Dated:  August 31, 2020

*/s/ W. Scott O'Connell, Esq..*
W. Scott O'Connell, Esq. (NH Bar No. 9070)
soconnell@nixonpeabody.com
Morgan C. Nighan, Esq. (NH Bar No. 21196)
mnighan@nixonpeabody.com
Kierstan E. Schultz, Esq. (NH Bar No. 20682)
kschultz@nixonpeabody.com
Nixon Peabody LLP
900 Elm Street
Manchester, NH 03101
T: (603) 628-4000

Dated:  August 31, 2020

**ALICE PECK DAY MEMORIAL HOSPITAL AND THE CHESHIRE MEDICAL CENTER**

*/s/ John P. Kacavas, Esq.*
John P. Kacavas, Esq. (NH Bar No. 8177)
John.P.Kacavas@hitchcock.org
One Medical Center Drive
Lebanon, NH  03756
T: (603) 653-3522

4820-6718-1768.4