UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JUN 23  PM 2: 33

CLERK

BY_____
DEPUTY CLERK

ALICE PECK DAY MEMORIAL HOSPITAL; )
THE CHESIRE MEDICAL CENTER;          )
VALLEY REGIONAL HOSPITAL, INC.;    )
and LITTLETON HOSPITAL                     )
ASSOCIATION, INC. d/b/a LITTLETON   )
REGIONAL HEALTHCARE,                       )
                                                                    )
          Plaintiffs,                                          )
                                                                    )
                    v.                                            )          Case No. 2:21-cv-102
                                                                    )
JENNEY SAMUELSON, in their official  )
Capacity as the Secretary of the Vermont )
Agency of Human Services;                    )
GREEN MOUNTAIN CARE BOARD,      )
                                                                    )
                                                                    )
          Defendants.                                       )

**OPINION AND ORDER GRANTING GREEN MOUNTAIN CARE BOARD'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 85)

On July 20, 2021, Plaintiffs Alice Peck Day Memorial Hospital ("APD"), The

Cheshire Medical Center ("Cheshire"), Valley Regional Hospital, Inc. ("VRH"), and

Littleton Hospital Association, Inc. d/b/a Littleton Regional Healthcare ("LRH")

(collectively, "Plaintiffs") filed their First Amended Complaint ("FAC") (Doc. 34)

seeking declaratory and injunctive relief against Defendants Michael Smith, in his official

capacity as the Secretary of the State of Vermont Agency of Human Services ("AHS"),

and AHS (collectively, the "State Defendants"); the Green Mountain Care Board

("GMCB"); and Xavier Becerra, in his official capacity as Secretary of the United States

Department of Health and Human Services ("HHS"), Chiquita Brooks-LaSure, in her

official capacity as Administrator of the Centers for Medicare & Medicaid Services

("CMS"), and CMS (collectively, the "Federal Defendants").

Plaintiffs contend that under the Vermont State Medical Plan and Vermont law, and with GMCB's consent, Plaintiffs are reimbursed at lower rates than in-state hospitals, causing Plaintiffs financial harm and threatening a core objective of Medicaid to provide medical coverage to the needy. The FAC asserts two claims against the GMCB: violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count I) and violation of the Dormant Commerce Clause pursuant to 42 U.S.C. § 1983 (Count II).

Plaintiffs are represented by Kierstan E. Schultz, Esq., Morgan C. Nighan, Esq., and W. Scott O'Connell, Esq. The GMCB is represented by Assistant Attorneys General David R. McLean and Briana T. Hauser.

## I. Procedural History.

On August 31, 2020, Plaintiffs filed their original Complaint in the District of New Hampshire. On October 13, 2020, the State Defendants moved to transfer venue to the District of Vermont. Their motion was granted on February 25, 2021. On April 9, 2021, the Federal Defendants moved to dismiss Counts III, IV, and V of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 22), and the State Defendants moved to dismiss Counts I and II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 23).

While the motions to dismiss were pending, Plaintiffs moved to amend their Complaint on May 28, 2021 (Doc. 32). This court granted Plaintiffs' motion on July 19, 2021, stating that it would consider the pending motions to dismiss in light of Plaintiffs' FAC (Doc. 33).

The court held oral arguments on the three motions to dismiss on January 7, 2022. On March 22, 2022, the court granted HHS's motion to dismiss Counts III, IV, and V for lack of subject matter jurisdiction and failure to state a claim, *see Alice Peck Day Mem'l Hosp. v. Smith*, 2022 WL 844075, at *8 (D. Vt. Mar. 22, 2022), granted in part and denied in part the State Defendants' motion to dismiss for failure to state a claim, *see Alice Peck Day Mem'l Hosp. v. Smith*, 2022 WL 850745, at *13 (D. Vt. Mar. 22, 2022), and denied the GMCB's motion to dismiss Counts I and II. *Id.* The court concluded that

2

"determination of GMCB's sovereign immunity must await a factual record." *Id.* at \*9.

On August 12, 2022, the GMCB moved for summary judgment (Doc. 85) and filed a statement of undisputed facts (Doc. 86). On September 6, 2022, Plaintiffs moved to defer consideration of the GMCB's motion for summary judgment and for leave to take discovery limited to the deposition of Jean Stetter, Administrative Services Director of the GMCB, regarding the contents of her affidavit supporting the GMCB's motion (Doc. 91). The court granted the motion on September 21, 2022 (Doc. 93). Plaintiffs opposed the GMCB's motion for summary judgment on January 18, 2023 (Doc. 112) and filed a statement of disputed facts (Doc. 113).[1] The GMCB replied on February 17, 2023 (Doc. 118). The court held oral argument on March 20, 2023, at which point it took the GMCB's motion for summary judgment under advisement.

## II.    The Undisputed Facts.

The GMCB was created by 18 V.S.A. § 9372, which states that the Vermont Legislature's intent was to "to create an independent board to promote the general good of the State[.]" *Id.* It was conceived as part of the General Assembly's attempt to "reform[] health care in Vermont.[.]" 18 V.S.A. § 9371(1). It is not a part of the State's Agency of Human Services. *See* 3 V.S.A. § 3002. Pursuant to 18 V.S.A. § 9372, the GMCB has five purposes related to Vermont's healthcare system:

(1) improving the health of the population;

(2) reducing the per-capita rate of growth in expenditures for health services in Vermont across all payers while ensuring that access to care and quality of care are not compromised;

(3) enhancing the patient and health care professional experience of care;

---

[1] In addition to their Statement of Disputed Material Facts, Plaintiffs provided their own "Statement of Undisputed Material Facts[.]" (Doc. 113 at 8-11). "[T]he Local Rules do not provide an opportunity for the nonmoving party to file a statement of undisputed facts at the summary judgment stage." *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013); *see also Schroeder v. Makita Corp.*, 2006 WL 335680, at \*3-4 (D. Vt. Feb. 13, 2006) (same). Generally, the court "disregard[s] [p]laintiff's additional facts unless it is clear from the parties' briefing that those facts are both material and undisputed." *Rotman*, 955 F. Supp. 2d at 276; *see also Boule v. Pike Indus., Inc.*, 2013 WL 711937, at \*1-2 (D. Vt. Feb. 27, 2013) (same). Here, Plaintiffs' additional facts are material, and the GMCB does not move to strike them.

(4) recruiting and retaining high-quality health care professionals; and

(5) achieving administrative simplification in health care financing and delivery.

The GMCB "consist[s] of a chair and four members" who are appointed for six year terms. *See* 18 V.S.A. § 9374(a)(1), (b)(1). The GMCB Nominating Committee (the "Nominating Committee") consists of nine members and nominates the GMCB's members. *See* 18 V.S.A. § 9390. The governor appoints two of the Nominating Committee's members, and the Committee on Committees appoints two members of the Senate who must not be of the same political party. The Speaker of the House appoints two members of the House, who also must not be of the same political party. The Governor, President Pro Tempore of the Senate, and Speaker of the House each appoint one of the remaining three members. *See id.* at § 9390(b)(1)(A)-(D).

Members of the Nominating Committee serve for two-year terms and may not serve for more than three consecutive terms. *Id.* at § 9390(b)(2). They receive "per diem compensation and reimbursement of expenses" paid out of the GMCB's budget and are "authorized to use the staff and services of appropriate State agencies and departments as necessary to conduct investigations of applicants." *Id.* at § 9390(c), (f). When a vacancy occurs on the GMCB, the Nominating Committee submits "to the Governor the names of the persons it deems qualified to be appointed to fill the position[,]" and the Governor makes an appointment from the list of qualified candidates with consent of the Senate. 18 V.S.A. § 9391. Members may be removed for cause. 18 V.S.A. § 9374(b).

The GMCB has regulatory, oversight, and planning duties which include but are not limited to: developing, implementing, and evaluating health care payment and delivery system reforms, 18 V.S.A. § 9375(b)(1); approving health insurance rates, 18 V.S.A. § 9375(b)(6); reviewing and establishing hospital budgets, 18 V.S.A. § 9375(b)(7); reviewing and approving certificate of need applications, 18 V.S.A. § 9375(b)(8); *see also In re ACTD LLC*, 2020 VT 89, ¶ 4, 213 Vt. 276, 250 A.3d 590, 593 ("The Board has broad authority to administer the [certificate of need] program."); certifying accountable care organizations, 18 V.S.A. § 9382(a); and reviewing and

4

approving accountable care organization budgets, 18 V.S.A. § 9382(b).

The GMCB is classified as a "[p]ublic agency" under Vermont's Public Records Act, 1 V.S.A. § 317(a)(2) (defining "[p]ublic agency" to include state boards), and is treated as a "[p]ublic body" for purposes of Vermont's Open Meeting Law. 1 V.S.A. § 310(4). It is empowered to "issue subpoenas, examine persons, administer oaths, and require production of papers and records." 18 V.S.A. § 9374(i). "A person who fails or refuses to appear, to testify, or to produce papers or records for examination before the Chair upon properly being ordered to do so may be assessed an administrative penalty by the Chair of not more than $2,000.00 for each day of noncompliance[.]" 18 V.S.A. § 9374(j). "Any person aggrieved by a final action, order, or other determination of the [GMCB] may, upon exhaustion of all administrative appeals available[,] . . . appeal to the Supreme Court[.]" 18 V.S.A. § 9381(b).

Similar to state agencies, the GMCB must "provide a process for soliciting public input" which "may include receiving written comments on proposed new or amended rules or holding public hearings, or both." 18 V.S.A. § 9378. It must also "ha[ve] access to data and analysis held by any [Vermont] Executive Branch agency which is necessary to carry out" its duties. 18 V.S.A. § 9379.

The GMCB is funded as follows:

> In addition to the assessment and collection of actual costs pursuant to subdivision (1) of this subsection and except as otherwise provided in subdivisions (2)(C) and (3) of this subsection, all other expenses of the Board shall be borne as follows:
>
> (i) 40 percent by the State from State monies;
>
> (ii) 30 percent by the hospitals;
>
> (iii) 24 percent by nonprofit hospital and medical service corporations licensed under 8 V.S.A. chapter 123 or 125, health insurance companies licensed under 8 V.S.A. chapter 101, and health maintenance organizations licensed under 8 V.S.A. chapter 139; and
>
> (iv) six percent by accountable care organizations certified under section 9382 of this title.

18 V.S.A. § 9374(h)(2)(A).

5

In addition, the GMCB is authorized to receive grants with the prior approval of the Governor and the Legislature as required by 32 V.S.A. § 5.[2] Authorized grant funds must be appropriated to the GMCB and reflected in its budget before they can be spent.

> [I]n 2015, out of its total budget of $9,491,312, the GMCB received a total of $6,745,047 in federal grant money, including $3,118,766 in Global Commitment grant funding, $2,599,847 in inter-departmental transfers from other federal grants, and $1,026,434 in rate review grants. . . . In 2016, out of its total budget of $10,193,255, the GMCB received a total of $7,381,956 in federal grant money, including $3,213,055 in global commitment grant funding, $3,090,282 in inter-departmental transfers from other federal grants, and $1,078,619 in rate review grants.

(Doc. 113 at 9-10, ¶ F.) The GMCB is not empowered to receive funds from sources not legislatively authorized or approved through an Executive Branch Excess Receipts Request.

The GMCB assesses an annual fee to hospitals and other healthcare facilities, insurers, and accountable care organizations for its regulatory oversight activities, referred to as the "Billback." The Billback is paid by hospitals and health insurance companies that are regulated by the GMCB so that the entities pay for a portion of the work. There is no statute governing what the GMCB must do with Billback funds. Billback funds are deposited into the Regulatory and Administrative Fund (the "Regulatory and Administrative Fund").

The Regulatory and Administrative Fund is a "special fund" as a matter of law.[3] *See* 18 V.S.A. § 9404(d) ("There is hereby created a special fund to be known as the Green Mountain Care Board Regulatory and Administrative Fund pursuant to 32 V.S.A. chapter 7, subchapter 5, for the purpose of providing the financial means for the Green Mountain Care Board to administer its obligations, responsibilities, and duties as required by law[.]"). A special fund is:

---

[2] "The Chair of the Board or designee may apply for grant funding, if available, to advance or support any responsibility within the Board's jurisdiction." 18 V.S.A. § 9374(g).

[3] Although Plaintiffs dispute this contention, they provide no record support for a contrary conclusion. Instead, they contend that "simply because the State Treasurer may manage the fund, that does not render the fund's contents State money." (Doc. 113 at 5, ¶ 12.)

created to account for specific revenues earmarked to finance particular or restricted programs and activities, or created by expressed enactment of the General Assembly or created by the Commissioner of Finance and Management to account for and manage such proceeds as those of court settlements or private bequests, transfers between State and local governments, monies of State institution inmate or patient operations, monies resulting from the disposal of State property, grants and other awards accepted by the General Assembly or in accordance with section 5 of this title, transfers of a general services nature between State agencies, or financial transactions by State government on behalf of nonstate entities.

32 V.S.A. § 585. The Commissioner of Finance and Management manages special funds. *See* 32 V.S.A. § 182(a)(14) ("[T]he Commissioner of Finance and Management shall: . . . Manage special funds in accordance with this section and with chapter 7, subchapter 5 of this title."). Vermont law provides that "the actual monies held" within special funds are "under the authority and responsibility of the State Treasurer." 32 V.S.A.§ 588(1).

The GMCB submits annual proposed budgets to Vermont's Governor and the Vermont Department of Finance and Management. The Executive Branch may reduce or change the GMCB's proposed budget without the GMCB's approval. The Governor's budget recommendations are submitted to the General Assembly and identify the GMCB as an entity within the Executive Branch. *See* Doc. 86-1 at 3, ¶ 7 ("The annual Governor's Recommended GMCB budget is included in the Governor's budget recommendations submitted to the General Assembly. The Fiscal Year 2023 Executive Budget Recommendation lists the GMCB as an entity within the Executive Branch.").

Once the GMCB's budget has been submitted to the General Assembly, the Department of Finance and Management prepares an appropriations bill, which must "provide appropriations for the maintenance and operation of all departments of the State." 32 V.S.A. § 701. The GMCB's budget is included in this bill. The GMCB presents its budget to the House and Senate appropriations committees for review. These committees may modify the GMCB's budget depending upon the State's fiscal needs and priorities.

Once the GMCB's budget has been appropriated, it is managed through the State's

7

accounting system. The GMCB may not spend in excess of its budget absent prior approval by the Commissioner of Finance and Management. Accordingly, the GMCB is unable to use Billback funds to cover an unexpected expense because the GMCB lacks the power to spend money that is not legislatively appropriated. 32 V.S.A. § 182(a)(1); 32 V.S.A. § 702.

The GMCB pays into the State's Liability Insurance Fund, which is "administered by the Secretary of Administration to adjust claims, [] pay judgments, and [] reimburse contractors and State agencies for services rendered." 29 V.S.A. § 1406(c). "All covered entities" are required to participate in the program and contribute to the Fund. *See id.*; *see also* Doc. 118 at 5 n.3 (citing FY 2023 State of Vermont Executive Budget Recommendation, at 945-46) (identifying general liability insurance in the GMCB's budget).

The GMCB's offices are in state-owned buildings. There is no evidence, however, that the GMCB is required to operate from a state-owned building.

Members of the GMCB and its employees are "State employees" under 18 V.S.A. § 9374(a)(1), meaning the State must defend and indemnify them. *See* 3 V.S.A. § 1101(a) ("In any civil action against a State employee . . . it shall be the obligation of the State to defend the action on behalf of the employee and to provide legal representation for that purpose at State expense[.]"); 12 V.S.A. § 5606(a) ("In any action defended by the Attorney General . . . in which a judgment is rendered against an employee of the State for acts or omissions within the scope of his or her employment, . . . the State shall indemnify the employee for the amount of the employee's liability.").

"The Chair shall have general charge of the offices and employees of the Board but may hire a director to oversee the administration and operation." 18 V.S.A. § 9374(d)(1). The Board may "establish procedures to ensure that Board employees have appropriate supervision in their performance of delegated activities and that the Board remains informed regarding these activities." *Id.* at § (d)(2)(B); *see also id.* at § (e)(2) ("The Board may establish additional advisory groups and subcommittees as needed to carry out its duties. The Board shall appoint diverse health care professionals to the

8

additional advisory groups and subcommittees as appropriate.").

## III. The Disputed Facts.

The GMCB follows the State's budgeting process, but the parties disagree whether this is legally mandated. Although the GMCB has never received a private donation, the parties differ in their predictions as to how it would be treated.

The GMCB asserts that the Vermont Legislature may use monies in the Regulatory and Administrative Fund "for other purposes[,]" citing Act 85 of 2017, ¶ D.101(b)(1) (2017), pursuant to which the Vermont Legislature transferred $850,000 from the Regulatory and Administrative Fund to the General Fund. Plaintiffs counter that there "is no evidence that the State can exert control over funds once they have been allocated to the GMCB. In the past, the State has reallocated Global Commitment Funds, which are part State money and part federal money, away from the GMCB, but did so prior to the setting of the budget." (Doc. 113 at 5, ¶ 13.)

The GMCB asserts that statutorily and in practice, all funds it receives must immediately be paid to the Treasurer pursuant to 32 V.S.A. § 502, which provides:

> The gross amount of money received in their official capacities by every administrative department, board, officer, or employee, from whatever source, shall be paid forthwith to the State Treasurer, or deposited according to the direction of the State Treasurer in such bank to the credit of the State Treasurer as the Treasurer shall designate, without any deduction on account of salaries, fees, costs, charges, expenses, claim, or demand of any description whatsoever, unless otherwise provided.

*Id.* Plaintiffs dispute this contention because the Billback funds must be deposited into the Regulatory and Administrative Fund. This is a distinction without a difference, however, because the State Treasurer holds "the actual monies" within such special funds. *See* 32 V.S.A.§ 588(1).

In response to the GMCB's assertions that it bills back entities on behalf of the Vermont Department of Health and Agency of Human Services, Plaintiffs assert that "[t]he GMCB only has permission to bill[ ]back two items for the Department of Health." (Doc. 113 at 5, ¶ 14.)

Whether the GMCB maintains its own bank account is disputed. The GMCB

asserts that it does not have its own bank account and that its expenses are instead "paid through the State's accounting system or through a purchasing card issued under the State's account." (Doc. 86 at 3, ¶ 18.) Plaintiffs claim, however, that the GMCB maintains a deposit account at M&T Bank and that the GMCB uses those funds to pay for previously approved, budgeted expenses.

The GMCB asserts that it would have to pay a money judgment with State funds, while Plaintiffs argue that "the procedure for satisfying any judgment is not clear" since it has not previously occurred. (Doc. 113 at 7, ¶ 19.) It claims that if a judgment were entered against the GMCB, the GMCB "would have to seek Legislative authority to obtain the funds to pay that judgment, and the Legislature could decide, in its discretion, not to issue those funds." (Doc. 112 at 9-10.) Plaintiffs do not claim there is any other source of monies for which a judgment could be paid at the GMCB's sole discretion.

The GMCB states that the State controls its day-to-day activities in the same manner that it manages other state agencies because the GMCB must use state payroll, accounting and budgeting practices; follow State contracting procedures; make purchases through statewide contracts; pay for administrative services common to all state agencies; and pay an annual allocated cost for the State's single audit. Plaintiffs contend that the GMCB's sole witness on this point, Jean Stetter, has no personal knowledge of how the GMCB is governed, performs its statutory functions, or conducts its day-to-day operations.

## IV. Conclusions of Law and Analysis.

### A. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court

10

"constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, not all disputes of fact are material—"[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

## B.    Whether the Disputed Facts Preclude Summary Judgment.

"On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248).

> Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are

critical and which facts are irrelevant that governs.

*Anderson*, 477 U.S. at 248 (internal citation omitted).

Summary judgment is inappropriate when there is a disputed issue of fact that must be resolved by evaluating the credibility of the witnesses or weighing the probative value of the evidence. *See Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). In this case, an evidentiary trial would not resolve whether the GMCB is entitled to Eleventh Amendment immunity, as that is purely a question of law for which the predicate facts are generally undisputed. For those few facts that remain disputed, the court accepts the Plaintiffs' version of them.

Accepting Plaintiffs' version of the contested facts, the remaining dispute is the parties' competing arguments regarding how the GMCB would pay a money judgment against it. This is a question that may be resolved on summary judgment. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) ("In the context of a summary judgment motion, a conclusion of law . . . does not, by itself, create a genuine issue of material fact for the obvious reason that a legal conclusion is not a factual statement[.]"); *Korn v. Fed. Ins. Co.*, 2019 WL 4277187, at *5 (W.D.N.Y. Sept. 10, 2019) (holding that disputed facts did not preclude summary judgment where they "consist[ed] of arguments regarding the proper characterization of undisputed evidence as opposed to actual disputes of fact.").

## C. Whether the GMCB is Entitled to Eleventh Amendment Immunity.

The GMCB seeks summary judgment on the basis that it is an arm of the State entitled to Eleventh Amendment immunity because it is a state agency created pursuant to Vermont law and because any judgment against it would be paid by state funds. Plaintiffs argue that this issue is undecided in Vermont and the GMCB has failed to establish that it is entitled to sovereign immunity as a matter of law.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

12

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. This "is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

"Although the text of the amendment speaks only of suits against a state by persons who are not citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to extend to suits by all persons against a state in federal court." *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996). It also "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state[,] *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009), meaning state agencies and departments may "assert the state's Eleventh Amendment [protection of sovereign] immunity." *Many v. Vermont Dep't of Corr.*, 2019 WL 5960590, at *3 (D. Vt. Nov. 13, 2019). An entity "is entitled to immunity if it can demonstrate that it is more like 'an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" *Mancuso*, 86 F.3d at 292 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).[4]

In ruling on GMCB's motion to dismiss, the court identified the framework for its Eleventh Amendment analysis, which it adopts herein. *See Alice Peck*, 2022 WL 850745, at *7-8.

The Second Circuit has applied two different tests "to determine whether government entities are 'arms of the state' entitled to sovereign immunity under the Eleventh Amendment." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134-35 (2d Cir. 2015). In *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79 (2d Cir. 2004), the Second Circuit applied a similar test to "guide the determination of whether an institution is an arm of the state[,]" considering two factors: (1) 'the extent to which the state would be

---

[4] A state may "waive its sovereign immunity by consenting to suit[,]"*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Bd.*, 527 U.S. 666, 670 (1999), or Congress may abrogate a state's immunity pursuant to the Fourteenth Amendment. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000).

13

responsible for satisfying any judgment that might be entered against the defendant entity,' and (2) 'the degree of supervision exercised by the state over the defendant entity.'" *Id.* at 82 (quoting *Pikulin v. CUNY*, 176 F.3d 598, 600 (2d Cir. 1999)).

In *Mancuso*, the Second Circuit considered the following factors:

(1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.

86 F.3d at 293.

If all the *Mancuso* factors "point in one direction, [ ] a court's inquiry is complete." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 240 (2d Cir. 2006). If the *Mancuso* factors provide mixed results, the court must consider "the twin reasons for the Eleventh Amendment: (1) protecting the dignity of the state, and (2) preserving the state treasury." *Id.* (citing *Mancuso,* 86 F.3d at 293). "If the outcome still remains in doubt" after this inquiry, "whether a judgment against the governmental entity would be paid out of the state treasury generally determines the application of Eleventh Amendment immunity." *Id.* at 241.

The *Clissuras* and *Mancuso* tests "have much in common," and the Second Circuit has clarified that "the choice of test is rarely outcome-determinative." *Leitner*, 779 F.3d at 137. In fact, "the *Clissuras* test incorporates four of the six *Mancuso* factors. To the extent that the *Clissuras* factors point in different directions, the additional factors from the *Mancuso* test can be instructive." *Id.* Like the Second Circuit in *Leitner*, the court "address[es] the *Clissuras* factors first and then look[s] to the additional *Mancuso* factors." *Id.*

### 1. Whether the State Would Be Financially Responsible for a Judgment Against the GMCB.

The first *Clissuras* factor evaluates the extent to which Vermont would be financially responsible for a judgment against the GMCB and is "the most important factor in determining whether a state entity is entitled to sovereign immunity[.]" *Id.* "This condition is also reflected in the third and sixth *Mancuso* factors, which address how the

14

entity is funded and whether the entity's obligations are binding upon the state, respectively." *Id.* "Receipt of government funding is relevant in determining whether the state is responsible for judgments against a state entity[,]" *id.* at 138, but is not dispositive. The court must consider whether the State is *legally* required to pay the GMCB's debts, as well as "whether a judgment . . . would have the *practical* effect of requiring payments from [Vermont]." *Mancuso*, 86 F.3d at 296 (emphasis supplied).

The GMCB asserts that the first *Clissuras* factor "squarely favors Eleventh Amendment immunity" because it "receives all its funding through legislative appropriations," (Doc. 85 at 11), all of its funds are "State funds," and any judgment against it would thus be paid with state funds. (Doc. 118 at 4).

Plaintiffs argue that "the prospect of any monetary liability is nonexistent because Plaintiffs are not seeking a money judgment and, therefore, sovereign immunity is not appropriate."[5] (Doc. 112 at 14.) Notwithstanding the relief sought, the *Clissuras* and *Mancuso* factors examine how a judgment would be paid for the purpose of determining whether sovereign immunity applies. They do not require a likelihood that monetary relief will be awarded.

Plaintiffs assert that "there is no statute, rule, regulation, or contract requiring the State to appropriate any money to pay a judgment or settlement payment if the GMCB has insufficient funds to do so." *Id.* at 15. For this reason, they argue the GMCB would have to seek the Legislature's approval to pay a judgment and the Legislature could decide, in its discretion, not to pay it. The GMCB points out there are two mechanisms through which a judgment could be paid. Under the Vermont Tort Claims Act ("VTCA"), "[a]ny award made or compromise or settlement against the State of Vermont agreed

---

[5] Under the doctrine of *Ex parte Young*, "the Eleventh Amendment does not bar a 'suit against a state official when that suit seeks . . . prospective injunctive relief.'" *Winokur v. Off. of Court Admin.*, 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)). It is well established, however, that *Ex parte Young* "has no application in suits against the states and their agencies, which are barred regardless of the relief sought." *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022) (internal quotation marks omitted) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

upon by the Attorney General shall be paid by the State Treasurer out of the appropriations of the department concerned." 12 V.S.A. § 5604. A judgment against it could also be paid by the State's Liability Insurance Fund, which is "administered by the Secretary of Administration to adjust claims, [] pay judgments, and [] reimburse contractors and State agencies for services rendered." 29 V.S.A. § 1406(c). "All covered entities" are required to participate in the program and contribute to the Fund, *id.*, and the GMCB does so.

Because the GMCB lacks the authority to receive funds from sources that are not legislatively authorized or approved by the Executive Branch, and because it may not use monies for unauthorized purposes, it has no ability to satisfy a judgment on its own. Plaintiffs concede that the GMCB's only recourse would be to ask the State of Vermont to pay it. Speculating that the State might refuse to do so does not alter the conclusion that state financial responsibility for a judgment is the GMCB's only recourse.[6]

Plaintiffs' reliance on *Patterson v. Pennsylvania Liquor Control Board* is misplaced because the Third Circuit "focuses on whether the state treasury is *legally* responsible for the payment of a judgment[,]" 915 F.3d 945, 951 (3d Cir. 2019) (internal quotation marks omitted), while the Second Circuit weighs the practical effect of a potential money judgment in addition to the legal effect. *See id.* In any event, in *Patterson*, the Third Circuit found the Pennsylvania Liquor Control Board was entitled to sovereign immunity. *See Patterson*, 915 F.3d at 956.

Because the GMCB lacks the authority to spend money not legislatively appropriated to it, because it lacks unfettered discretion to spend appropriated money as it sees fit, and because any judgment against it would be satisfied by state monies or not at

---

[6] *Cf. Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 295 (2d Cir. 1996) (finding that the New York Thruway Authority's funding structure weighed against sovereign immunity when "[n]o provision of New York law require[d] the state to fund [its] operations[,]" it had only received funding from the State in certain discrete instances, and was self-funded and self-sustaining).

16

all,[7] the first *Clissuras* factor weighs in favor of granting the GMCB Eleventh Amendment immunity because the State of Vermont would ultimately be responsible for any money judgment against the GMCB.

**2.      The Degree of Supervision the State Exercises Over the GMCB.**

The second *Clissuras* factor examines "the degree of supervision exercised by the state over the defendant entity." *Clissuras*, 359 F.3d at 82 (internal quotation marks omitted) (quoting *Pikulin*, 176 F.3d at 600). This incorporates "the second and fifth *Mancuso* factors, which consider how the governing members of the entity are appointed and whether the state has veto power over the entity's actions, respectively." *Leitner*, 779 F.3d at 138. In determining whether an entity is entitled to sovereign immunity, the Supreme Court has "focused on the 'nature of the entity created by state law' to determine whether it should 'be treated as an arm of the State'" by "considering the provisions of state law that define the agency's character." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 & n.5 (1997) (quoting *Mt. Healthy*, 429 U.S. at 280). Members' appointment by state officials is "indicative of an entity's operation as an arm of the state." *Woods*, 466 F.3d at 244 (citing *McGinty v. State of New York*, 251 F.3d 84, 96-97 (2d Cir. 2001); *Mancuso*, 86 F.3d at 295).

Members of the GMCB are nominated by committee members who are appointed by state officials. Each member chosen must then be appointed by the Governor with consent of the Senate. The State's dominant role in the GMCB's appointment process weighs heavily in favor of finding sovereign immunity. *See Walker v. City of Waterbury*, 253 F. App'x 58, 61 (2d Cir. 2007) (holding that six of an entity's seven members appointed by state officials or elected in statewide elections constituted a "strong[] indicat[ion] that the [entity] is a state agency rather than an instrumentality of the City"); *see also McGinty*, 251 F.3d at 96-97 (noting that state appointment of officials weighed

---

[7] The latter possibility is exceedingly unlikely and would essentially be a default by the State of Vermont. A judgment creditor who prevailed at trial would be left empty-handed with not only no payment of a money judgment but few, if any, post-judgment remedies. It is no surprise this outcome is unprecedented in Vermont's history.

17

in favor of extending Eleventh Amendment immunity).

"[E]vidence of the state's authority actually to veto the decisions" of an entity may also weigh in favor of extending Eleventh Amendment immunity, *Woods*, 46 at 248, although the absence of veto power is not dispositive provided "limitations on the [entity's] powers [] deny it 'unfettered discretion.'" *Walker v. City of Waterbury*, 421 F. Supp. 2d 461, 470 (D. Conn. 2006) (quoting *McGinty*, 251 F.3d at 99). Although the State lacks veto power over the GMCB's decisions because the Legislature intended to create an "independent board" free from arbitrary veto power and political influence, numerous statutory limitations constrain the GMCB's discretion and govern its activities. *See, e.g.*, 18 V.S.A. § 9456 (establishing criteria for hospital budget review); § 9382 (establishing criteria for [accountable care organization] certification and budget review); § 9437 (establishing criteria for review of certificates of need); § 9551 (establishing criteria for implementing an all-payer value-based model); § 9405 (requiring collaboration with Secretary of Human Services to develop State Health Improvement Plan and Health Resource Allocation Plan). The GMCB thus by no means has unfettered discretion to conduct its core functions as it sees fit.

Similarly, although state control over an entity's day-to-day operations weighs in favor of finding sovereign immunity, and the State of Vermont does not dictate the GMCB's day-to-day operations, the State of Vermont retains significant control and oversight over the GMCB's operations. The GMCB may not choose its own members, alter its purpose or functions, or alter its budget once appropriated. The Executive Branch, however, may modify the GMCB's budget without its consent. *Cf. Leitner*, 779 F.3d at 139 (finding that the record did not indicate state control "over [college's] day-to-day operations" when the college's "officers, curriculum, and budget [were] subject to" approval of its own board, not approval of the State). On balance, the State's lack of control over GMCB's day-to-day operations weighs against sovereign immunity, but its considerable involvement in and oversight of those operations renders this factor close to neutral.

### 3. Whether the Remaining *Mancuso* Factors Weigh in Favor of Eleventh Amendment Immunity.

"To the extent that the *Clissuras* factors point in different directions, the additional factors from the *Mancuso* test can be instructive." *Leitner*, 779 F.3d at 137. These factors ask how the entity is referred to in its original documents and "whether the entity's function is traditionally one of local or state government[.]" *Mancuso* 86 F.3d at 293.

#### a. How the Entity is Created and Governed.

The Second Circuit "routinely look[s] to state decisional law[,]" such as whether a state's highest court has described the entity as a state agency. *Walker*, 253 F. App'x at 61 (citations omitted). The Vermont Supreme Court has referred to the GMCB's regulations as "state agency regulations[.]" *In re Confluence Behav. Health, LLC*, 2017 VT 112, ¶ 28, 206 Vt. 302, 316, 180 A.3d 867, 877. It has also addressed the GMCB's power to interpret and modify a certificate of need as part of the "powers of an administrative agency[.]" *ACTD*, 2020 VT 89, ¶ 19 (internal quotation marks and citation omitted). It has not, however, squarely decided whether the GMCB is an arm of the state.

If a state constitution or state law creates the entity, and it is governed by state law, the first additional *Mancuso* factor weighs in favor of finding the entity an arm of the state. *See, e.g.*, *O'Neill v. Rutland Cnty. State's Atty.'s Off.*, 2016 WL 7494857, at *5 (D. Vt. Dec. 29, 2016) ("As both Defendants are created by either the Vermont Constitution or Vermont statute and as they are governed by Vermont law, the first *Mancuso* factor weighs in favor of finding that Defendants are 'arms of the state.'"). The GMCB was created by Vermont statute, *see* 18 V.S.A. § 9372, and is governed by Vermont law, and thus both its origin and its functions are determined by the Vermont Legislature. The GMCB has no authority to alter its purpose, take on new functions, or reject legislative oversight. This weighs in favor of finding that it is more like a state agency than an independent entity.

#### b. Whether the Entity's Functions are those of a State or Local Government.

If the entity's function is traditionally one of state rather than local government, the final remaining *Mancuso* factor weighs in favor of extending sovereign immunity.

The Vermont Legislature created the GMCB as part of an attempt to reform healthcare in Vermont. Its members and employees are State employees, and Vermont is required to defend and indemnify them. *See* 18 V.S.A. § 9374(a)(1); 3 V.S.A. § 1101(a); 12 V.S.A. § 5606(a).

Healthcare is traditionally a function of state law. *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 38 (1905) ("The safety and the health of the people of [states] are, in the first instance, for that [state] to guard and protect."); *Great Atl. & Pac. Tea Co., Inc. v. Cottrell*, 424 U.S. 366, 371 (1976) ("[U]nder our constitutional scheme[,] the States retain 'broad power' to legislate protection for their citizens in matters of local concern such as public health[.]"); *Hillsborough Cnty., Fla. v. Automated Med. Laby's, Inc.*, 471 U.S. 707, 719 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."). Municipalities generally provide no regulatory oversight of healthcare and are generally not involved in its administration. The GMCB's statewide operations to fulfill Vermont's goal to reform its healthcare system weighs in favor of finding its function is traditionally one of state government.

Because on balance both the *Clissuras* factors and the two remaining *Mancuso* factors weigh in favor of finding that the GMCB is an arm of the state, the GMCB is entitled to sovereign immunity under the Eleventh Amendment and may not be sued in federal court.

## CONCLUSION

For the foregoing reasons, the court GRANTS the GMCB's motion for summary judgment (Doc. 85) and hereby DISMISSES the GMCB from this case.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of June, 2023.

Christina Reiss, District Judge
United States District Court

20